# EXHIBIT A

## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

LEN STOLER INC.,
11275 Reisterstown Rd.
Owings Mills, Maryland 21117

        Plaintiff,

    v.

HYUNDAI MOTOR AMERICA CORPORATION,
10550 Talbert Ave.
Fountain Valley, California 92708

GENESIS MOTOR AMERICA LLC,
10550 Talbert Ave.
Fountain Valley, California 92708

PETER PRATHER,

and MICHAEL DEPAUL,

        Defendants.

Civil Action No. C-03-CV-21-003840

**COMPLAINT**

Plaintiff Len Stoler Inc., by and through its undersigned counsel, alleges as follows:

### NATURE OF THE ACTION

1.  Plaintiff is a successful Hyundai and Genesis motor vehicle dealer in Owings Mills, Maryland.

2.  Defendant Hyundai Motor America Corporation's ("Hyundai") and Defendant Genesis Motor America LLC's ("Genesis" and together with Hyundai, the "Hyundai Defendants") have imposed illegal sales performance standards and

1

unlawfully charged back incentive monies owed to Plaintiff, all in violation of the Maryland Transportation Code.

3.      With respect to the unlawful chargeback of incentives, the Hyundai Defendants, together with Defendants Peter Prather ("Prather") and Michael DePaul ("DePaul") induced Plaintiff into selling motor vehicles to an independent affiliate with the expectation that such sales qualified for wholesale price discounts (in the form of per-vehicle incentive payments) under the Hyundai Defendants' Sales Reporting Rules and Regulations ("Sales Rules"), only to improperly charge those incentives back.

4.      Plaintiff seeks a determination under Md. Transp. Code § 15-207(e)(3)(iii) that Defendants' performance standards are unfair and unreasonable and Plaintiff suffered damages from Defendants' unlawful incentive chargeback.

## PARTIES

5.      Plaintiff is a corporation duly organized and existing under the laws of Maryland, with its principal place of business at 11275 Reisterstown Rd., Owings Mills, MD 21117 ("Dealership Location"). Plaintiff is also a "Dealer" under Md. Transp. Code § 15-101(c).

6.      Defendant Hyundai is a corporation duly organized under the laws of California, has its principal place of business at 10550 Talbert Ave., Fountain Valley, CA 92708, and is authorized to do business in the state of Maryland. Hyundai is a "Distributor" and "Manufacturer" under Md. Transp. Code §§15-201(b) and (e).

7.      Defendant Genesis is a limited liability company duly organized under the laws of California, has its principal place of business at 10550 Talbert Ave., Fountain

Valley, CA 92708, and is authorized to do business in the state of Maryland. Genesis is a "Distributor" under Md. Transp. Code § 15-201(b).

8.    On information and belief, Defendant Prather is the Regional District Manager, Sales for Defendant Hyundai who travels often to the State of Maryland as part of his job responsibilities with Hyundai and conducts business in Maryland on its behalf. Prather's activities in the State of Maryland relate to the claims in this action.

9.    On information and belief, Defendant DePaul is the Regional General Manager, Mid-Atlantic for Defendant Genesis and travels often to the State of Maryland as part of his job responsibilities with Genesis and conduct business in Maryland on its behalf. DePaul's activities in the State of Maryland relate to the claims in this action.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the Defendants because they each have sufficient minimum contacts with Maryland to render the exercise of jurisdiction by Maryland courts permissible under traditional notions of fair play and substantial justice and that the actions alleged against the Defendants occurred in Maryland.

11.    This Court has jurisdiction over Plaintiff's statutory claims under Md. Transp. Code § 15-213, which provides that "if a person suffers financial injury or other damage as a result of this subtitle by any other person, whether or not that other person has been found guilty of a criminal violation, the injured person may recover damages and reasonable attorneys' fees in any court of competent jurisdiction."

12.     In addition, Md. Transp. Code § 15-207(e)(3)(ii) authorizes this Court "to determine whether…the application of the performance standard, sales objective, or program is unfair or unreasonable under this paragraph."

13.     Venue is proper in this Court because many of the transactions and wrongdoings complained of herein occurred in this County and State, the Maryland Transportation Code designates this Court as the venue for statutory claims against the Defendants, and Defendants have received substantial compensation in this County and State by doing business here and engaging in many activities which had an effect in this County and State.

## THE MARYLAND DEALER ACT

14.     Subtitle 2 of Title 15 of the Md. Transp. Code ("Maryland Dealer Act") regulates the business relationship between manufacturers and distributors like Hyundai and Genesis and their dealers like Plaintiff.

15.     The Maryland Dealer Act proscribes certain conduct that the Maryland Legislature has determined is harmful to the public, including to Maryland motor vehicle dealers.

16.     The Maryland Dealer Act regulates, among other things, performance standards, incentives, and chargebacks.

17.     Maryland Dealer Act § 15-207(e) regulates performance standards set by manufacturers and distributors.

4

18.   Under Maryland Dealer Act § 15-207(e)(2), it is unlawful for a manufacturer or distributor to "require or coerce a dealer to adhere to performance standards that are not applied uniformly to other similarly situated dealers."

19.   Under Maryland Dealer Act § 15-207(e)(3)(i), a manufacturer or distributor may not impose a performance standard "that may have a material effect on a dealer, including the dealer's right to a benefit or payment under any incentive or reimbursement program, and the application of the standard, sales objective" unless such standard is:

    a.   fair, reasonable, and equitable;
    b.   based on accurate information; and
    c.   includes consideration of the demographic characteristics and consumer preferences of the population in the dealer's assigned market area, including:
        i.   Car and truck preferences of consumers; and
        ii.  Geographic characteristics, such as natural boundaries, road conditions, and terrain, that affect car and truck shopping patterns.

20.   Under Maryland Dealer Act § 15-207(e)(3)(ii):

A dealer that claims that the application of a performance standard, sales objective, or program for measuring dealership performance is unfair or unreasonable due to the manufacturer, distributor, or factory branch failing to reasonably consider demographic characteristics of the population in the dealer's assigned market area, including car and truck preferences of consumers, or due to the geographic characteristics, such as natural boundaries, road conditions, and terrain, that affect car and truck shopping patterns in the dealer's assigned marketing area, may file a claim in a court of competent jurisdiction to determine whether the design of the assigned market area or the application of the performance standard, sales objective, or program is unfair or unreasonable.

21.   The Maryland Dealer Act also regulates incentives and manufacturer audits and "chargebacks" of incentives.

5

22.     Maryland Dealer Act § 15-212.1(c)(1) imposes a six-month cap beginning from the date of the incentive claim on audits and chargebacks, and limits chargebacks to claims that the manufacturer can show are "false or unsubstantiated."

23.     The Maryland Dealer Act also imposes a statutory good-faith requirement on all manufacturers and distributors.

24.     Maryland Dealer Act § 15-206.1 defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."

25.     Maryland Dealer Act § 15-206.1(b) requires manufacturers and distributors to exercise good faith: "(1) In acting or purporting to act under the terms, provisions, or conditions of any franchise agreement; or (2) In any transaction or conduct governed by this subtitle."

26.     Finally, Maryland Dealer Act § 15-213 provides that a person injured by a violation of the Maryland Dealer Act may recover damages and reasonable attorneys' fees.

## GENERAL ALLEGATIONS

**A.      Dealer Background and the Dealership Agreements**

27.     Plaintiff and the Hyundai Defendants are parties to dealer agreements authorizing Plaintiff to sell and service Hyundai and Genesis motor vehicles from the Dealership Location.

28.     Plaintiff has been a franchised Hyundai dealer since the spring of 2011 and a franchised Genesis dealer since the spring of 2019.

29.     When Genesis and Plaintiff entered into a dealer agreement, the Hyundai Defendants authorized Plaintiff to operate Hyundai and Genesis dealerships under one roof.

30.     Plaintiff has operated consolidated Hyundai and Genesis dealerships from the Dealership Location since 2019.

31.     The Dealership Location is well suited to serve Plaintiff's customers in terms of vehicle sales, service, and parts operations.

**B.     Hyundai Defendants' Unfair Sales Efficiency Metric**

32.     The Hyundai Defendants use an unreasonable and unfair performance standard called "sales efficiency" to evaluate Plaintiff's sales performance.

33.     To calculate sales efficiency, the Hyundai Defendants first assign each dealer a geographic territory called a Primary Market Area ("PMA").

34.     PMAs consist of census tracts defined by the U.S. Census Bureau. Census tracts are typically assigned to the closest dealer, with certain exceptions to account for road networks and natural barriers (such as rivers and lakes).

35.     Whenever a new motor vehicle is bought or leased, that vehicle is registered with the state at the customer's address. This registration data is compiled by census tract and used by manufacturers and distributors like the Hyundai Defendants for various purposes, including measuring sales performance.

36.     The Hyundai Defendants also divide the universe of motor vehicles into individual vehicle class segments (*e.g.*, mid-sized sedans, small SUVs, and so on), and

luxury and non-luxury brands (BMW, Mercedes, and Audi on one hand and Hyundai, Honda, Ford, Toyota, and so forth on the other).

37.     Using this registration and segmentation data, the Hyundai Defendants calculate "sales efficiency." Sales efficiency is a fraction, expressed as a percentage, where the numerator is all of a dealer's retail sales, wherever made, and the denominator is the dealer's "expected" sales – as dictated according to the Hyundai Defendants' unfair, unreasonable and inequitable criteria and assumptions:

$$\text{Sales efficiency} = \frac{\text{Actual Sales}}{\text{"Expected Sales"}} \times 100$$

38.     "Expected Sales", the sales efficiency denominator, is calculated by applying the Hyundai Defendants' respective statewide market share, in each vehicle segment, to all of the competitive retail motor vehicle registrations in the dealer's PMA:

**"Expected" Sales = Hyundai's Statewide Market Share in   x   Segment Registrations in**

**Segment                          PMA**

**(repeated for each vehicle segment in which Hyundai and Genesis compete)**

39.     Sales efficiency is unfair, unreasonable, inequitable, not based on accurate information, and does not consider all demographic characteristics and consumer preferences of the population in the dealer's PMA. While sales efficiency purports to adjust for the individual consumer preferences of vehicle type (small cars vs. large SUVs, and so on), it does not, for example, consider whether there is a brand preference within a given area that the dealer has to overcome.

40.     Moreover, the definitions, assumptions, criteria, and targets that undergird the sales efficiency metric compare disparate dealers in an unfair, unreasonable, and

inequitable manner. Dealers across the state face different markets, clienteles, and local challenges. The sales efficiency metric ignores these local market differences.

41.     A 100% sales efficiency score is merely an average, and at any given time about half of all Hyundai and Genesis dealers may fail to meet their objective and may be subject to adverse action by Hyundai and Genesis, including, but not limited to, threats of franchise termination for "unsatisfactory" sales efficiency.

**C.     Hyundai's Unlawful and Unfair DPB 4.0 Program**

42.     In addition to using sales efficiency as a measure of sales performance, Hyundai also uses sales efficiency to set objectives under its Dealer Performance Bonus ("DPB 4.0") program. DPB 4.0 requires Hyundai dealers to meet sales volume objectives and sales efficiency targets in order to receive incentives in the form of per-vehicle wholesale price discounts ("incentive discounts").

43.     On information and belief, Hyundai sets volume objectives by applying arbitrary projected sales increases to a baseline figure of either historical sales or expected sales using the sales efficiency formula described above. As with sales efficiency, the sales volume objectives do not account for all demographic characteristics and consumer preferences of the population in a dealer's PMA, as required by Maryland Transportation Code § 15-207(e)(3).

44.     Under the DPB 4.0, Hyundai pays dealers incentive discounts equal to between 0% and 3% of manufacturer's suggested retail price ("MSRP") of each new vehicle the dealer sells, with the amount dependent on the extent to which the dealer meets

both sales volume objectives and sales efficiency objectives. The grid used by Hyundai to determine the DPB 4.0 incentive discount is below:

| DPB 4.0 | | | | |
|---|---|---|---|---|
| **Objective Attainment** | **Sales Efficiency** | | | |
| | **< 100%** | **100-149%** | **150-199%** | **200%+** |
| 0%-99% | 0.0% | 1.5% | 2.25% | 2.5% |
| 100%-109% | 0.5% | 2.0% | 2.5% | 2.75% |
| 110%-119% | 1.0% | 2.25% | 2.75% | 3.0% |
| 120%+ | 3.0% | 3.0% | 3.0% | 3.0% |

45. Hyundai provides increasing incentive discounts to dealers under DPB 4.0 for meeting performance standards that are unreasonable and fail to consider all existing circumstances.

46. Through DPB 4.0, Hyundai established and implemented sales performance criteria for Plaintiff that are unfair, unreasonable, inequitable, based on inaccurate information, and do not account for all demographic characteristics and consumer preferences of the population in the dealer's PMA as explained in Maryland Transportation Code § 15-207(e)(3).

47. For example, DPB 4.0's sales volume and sales efficiency metrics both ignore, among other material factors, that different dealers face different demographics, different consumer preferences beyond segment popularity, brand popularity, different lease penetration rates, different levels of competition, and different marketing budgets of competing line-makes.

48.     Whether as standalone performance metrics or as components of DPB 4.0, Hyundai's sales volume and sales efficiency metrics are unfair, unreasonable,  arbitrary, and do not fairly represent the realistic sales opportunity available to Plaintiff.

**D.     Genesis's Unlawful and Unfair RPB and Leadership Bonus Programs**

49.     Like Hyundai, Genesis offers incentives conditioned on the dealer achieving arbitrary and unreasonable sales objectives.

50.     Known as the Retailer Performance Bonus ("RPB"), Genesis pays a dealer an amount equal to 1.5% of the MSRP of each vehicle the dealer sells.

51.     RPB is based on unreasonable and arbitrary sales volume objectives that do not take into account all demographic characteristics and consumer preferences of the population in the dealer's PMA.

52.     On information and belief, Genesis sets volume objectives by applying arbitrary projected sales increases to a baseline figure of either historical sales or expected sales using the sales efficiency formula described above. The sales volume objectives do not account for all demographic characteristics and consumer preferences of the population in a dealer's PMA as required by Maryland Transportation Code § 15-207(e)(3).

53.     Genesis does not adjust RPB for any of the factors required under the Maryland Dealer Act and is therefore an unlawful and arbitrary performance standard.

54.     In addition to RPB, Genesis also ties an additional incentive discount equal to 4% of MSRP to a "Leadership Bonus" that, among other things, requires dealer to meet

its RPB objective. In effect, the incorporation of RPB into the Leadership Bonus renders the Leadership Bonus unlawful.

**E.      Plaintiff's Qualification for Sales Incentives and Incentive Discounts**

55.      From time to time the Hyundai Defendants offer certain benefits and incentives on vehicles sold by dealers like Plaintiff.

56.      These incentives and benefits include incentive discounts, like the DPB 4.0 and RPB discussed above, but also take many other forms, including special finance interest rates, special lease deals, or rebates.

57.      To qualify for incentives and benefits, a dealer's motor vehicle sales must meet the Hyundai Defendants' definition of a "Retail Sale."

58.      The Sales Rules define a Retail Sale of a vehicle as follows:

   a.  It meets all the elements of a valid sale;
   b.  It is made to an independent third party (consumer);
   c.  The vehicle is delivered to an independent commercial customer;
   d.  The vehicle is titled with the state in the name of the independent third party consumer and all applicable taxes has been paid. The title of the vehicle must pass to the consumer or his/her financing company;
   e.  The retail sales agreement or buyer's contract does not contain any guaranteed buy-back with a daily/mileage depreciation provision.

59.      At all relevant times, Plaintiff's motor vehicle sales complied with Hyundai Defendants' requirements for a Retail Sale.

**F.      Prather and DePaul Encouraged and Induced Plaintiff to Make Sales to Kingsley & Co.**

60.      Prather and DePaul were Regional District Sales Managers for Plaintiff's Hyundai and Genesis franchises, respectively.

61.     For several years, Plaintiff sold Hyundai and Genesis motor vehicles to an affiliate, Kingsley & Co., which is an independent commercial customer, as that term is used in the Sales Rules.

62.     Prather and DePaul knew that Plaintiff sold Hyundai and Genesis motor vehicles to Kingsley & Co. for several years and knew that Kingsley & Co. was affiliated with Plaintiff.

63.     At no time did Prather or DePaul notify Plaintiff that vehicles reported as sold to Kingsley & Co. may be considered "invalid sales" and ineligible for retail sales incentives.

64.     On the contrary, both Prather and DePaul encouraged Plaintiff to make sales to Kingsley & Co. in order to hit sales volume objectives and receive eligible retail sales incentives.

65.     Prather and DePaul's endorsement of Plaintiff's motor vehicle sales to Kingsley & Co. over several years served as approval of the transactions as "Retail Sales" under the Sales Rules.

66.     Relying on Prather and DePaul approving Plaintiff's motor vehicle sales to Kingsley & Co., Plaintiff understood the reporting of vehicles sold to commercial customers as a standard practice within the retail business of any Hyundai or Genesis franchise across the United States.

**G.   The Audit Letters, Plaintiff's Appeal, and Hyundai's and Genesis's Rejection**

67.     Hyundai sent a letter dated December 15, 2020 informing Plaintiff that it had conducted an audit of incentive discounts and alleged that certain sales by Plaintiff were ineligible for retail incentives ("Hyundai Audit Letter").

68.     The Hyundai Audit Letter also noted that Hyundai intended to penalize Plaintiff with over $240,000 in chargebacks for sales that purportedly did not qualify as retail sales under the Sales Rules.

69.     The crux of Hyundai's proposed chargebacks related to Plaintiff's sale of Hyundai motor vehicles to Kingsley & Co.

70.     On or about January 12, 2021, Plaintiff notified Hyundai that it was appealing the Hyundai Audit Letter ("Hyundai Appeal Letter").

71.     In the Hyundai Appeal Letter, Plaintiff confirmed that Kingsley & Co. was a commercial customer, independent of Plaintiff, and pointed out that Hyundai, through its agent, Prather, had approved of, and encouraged, Plaintiff to make Hyundai sales to Kingsley & Co.

72.     Plaintiff also requested that any portion of Hyundai's proposed chargeback that related to motor vehicle sales to Kingsley & Co. be reversed and the chargeback amount be recalculated.

73.     Despite the Hyundai Appeal Letter, Hyundai notified Plaintiff on or about February 2, 2021 that its final decision was to impose chargebacks of $208,942 against Plaintiff for sales that did not meet the definition of a "Retail Sale" under the Sales Rules.

74.    Genesis sent a letter dated December 14, 2020 informing Plaintiff that it had audited sales incentive payments made to Plaintiff. ("Genesis Audit Letter" and with the Hyundai Audit Letter the "Audit Letters"). Like Hyundai, Genesis alleged that certain sales made by Plaintiff did not qualify as "Retail Sales" under the Sales Rules.

75.    The Genesis Audit Letter stated that Genesis intended to penalize Plaintiff with over $19,000 in chargebacks for sales that were allegedly not retail sales.

76.    Like Hyundai, Genesis alleged that Plaintiff's sales to Kingsley & Co. did not qualify as "Retail Sales" under the Sales Rules.

77.    By letter dated January 12, 2021, Plaintiff notified Genesis that it was appealing the Genesis Audit Letter ("Genesis Appeal Letter").

78.    In the Genesis Appeal Letter, Plaintiff confirmed that Kingsley & Co. was a commercial customer independent of Plaintiff, and  pointed out that Genesis, through its agent and sales representative, DePaul, had approved of, and even encouraged Plaintiff to continue to make sales to Kingsley & Co. over the audit period.

79.    Plaintiff also requested that any portion of Genesis's proposed chargeback that related to motor vehicle sales to Kingsley & Co. be reversed and the chargeback amount be recalculated.

80.    Despite the Genesis Appeal Letter, Genesis notified Plaintiff on or about February 2, 2021 that its final decision was to impose chargebacks of $19,559.30 against Plaintiff for the sales made to Kingsley & Co. that purportedly were not "Retail Sales" under the Sales Rules.

**FIRST CLAIM FOR RELIEF**
**(Violation of Md. Transp. Code § 15-207(e)**

15

**against the Hyundai Defendants – Sales Efficiency)**

81.     Plaintiff incorporates paragraphs 1 to 80 by reference as though fully set forth herein.

82.     Under Maryland Dealer Act § 15-207(e)(3), manufacturers and distributors are prohibited from establishing, implementing, or enforcing criteria for measuring "an assigned market area or a performance standard, sales objective, or program for measuring dealership performance that may have a material effect on a dealer, including the dealer's right to a benefit or payment under any incentive or reimbursement program, and the application of the standard, sales objective, or program by a manufacturer, distributor, or factory branch" unless such program is i) fair, reasonable, and equitable; ii) based on accurate information; and iii) includes considerations of the demographic characteristics and consumer preferences of the population in the dealer's assigned market area.

83.     Sales efficiency is a "performance standard, sales objective, or program for measuring dealership performance that may have a material effect on the dealer, including the dealer's right to a benefit or program under any incentive or reimbursement program" as those terms are used in Maryland Dealer Act § 15-207(e)(3)(i).

84.     Sales efficiency constitutes a sales performance metric that is unfair, unreasonable, inequitable, and does not consider all relevant and material local and regional criteria, data, and facts.

85.     Sales efficiency compares actual sales to the sales the Hyundai Defendants "expect" that particular dealer to make.

16

86.     Sales efficiency is an outdated and discredited sales performance metric that fails to account for local market conditions and consumer preferences other than segment popularity.

87.     Sales efficiency does not include all relevant and material criteria, data, or facts, and do not fairly compare Plaintiff to dealerships of comparable size in comparable markets.

88.     Establishment, implementation, and enforcement of the sales efficiency metric adversely affects Plaintiff by measuring its performance against an unreasonable and arbitrary standard.

89.     Plaintiff's failure to achieve the unreasonable objectives has put its franchise at risk of termination.

90.     Plaintiff is therefore entitled to a determination under Maryland Dealer Act § 15-207(e)(3)(ii) that sales efficiency is unlawful under Maryland law and that the Hyundai Defendants are prohibited from using sales efficiency to evaluate sales performance.

## SECOND CLAIM FOR RELIEF
### (Violation of Md. Transp. Code § 15-207(e) against Hyundai – DPB 4.0)

91.     Plaintiff incorporates paragraphs 1 to 80 by reference as though fully set forth herein.

92.     Under Maryland Dealer Act § 15-207(e)(3), manufacturers and distributors are prohibited from establishing, implementing, or enforcing criteria for measuring "an assigned market area or a performance standard, sales objective, or program for measuring dealership performance that may have a material effect on a dealer, including the dealer's

right to a benefit or payment under any incentive or reimbursement program, and the application of the standard, sales objective, or program by a manufacturer, distributor, or factory branch" unless such program is i) fair, reasonable, and equitable; ii) based on accurate information; and iii) includes considerations of the demographic characteristics and consumer preferences of the population in the dealer's assigned market area.

93.     DPB 4.0 is a "performance standard[s], sales objective[s], or program[s] for measuring dealership performance that may have a material effect on the dealer, including the dealer's right to a benefit or program under any incentive or reimbursement program" as those terms are used in Maryland Dealer Act § 15-207(e)(3)(i).

94.     DPB 4.0 is a sales performance criteria that is unfair, unreasonable, inequitable, and does not consider all relevant and material local and regional criteria, data, and facts.

95.     DPB 4.0 includes all of sales efficiency's flaws and adds the sales volume objective's additional flaws.

96.     Establishment, implementation, and enforcement of DBP 4.0 adversely affects Plaintiff, as they have put Plaintiff at risk of forfeiting significant incentive discounts under DPB 4.0.

97.     Plaintiff is therefore entitled to a determination under Maryland Dealer Act § 15-207(e)(3)(ii) that DPB 4.0 is unlawful under Maryland law.

**THIRD CLAIM FOR RELIEF**
**(Violation of Md. Transp. Code § 15-207(e) against Genesis –**
**RPB and Leadership Bonus)**

18

98.     Plaintiff incorporates paragraphs 1 to 80 by reference as though fully set forth herein.

99.     Under Maryland Dealer Act § 15-207(e)(3), manufacturers and distributors are prohibited from establishing, implementing, or enforcing criteria for measuring "an assigned market area or a performance standard, sales objective, or program for measuring dealership performance that may have a material effect on a dealer, including the dealer's right to a benefit or payment under any incentive or reimbursement program, and the application of the standard, sales objective, or program by a manufacturer, distributor, or factory branch" unless such program is i) fair, reasonable, and equitable; ii) based on accurate information; and iii) includes considerations of the demographic characteristics and consumer preferences of the population in the dealer's assigned market area.

100.    RPB is a "performance standard[s], sales objective[s], or program[s] for measuring dealership performance that may have a material effect on the dealer, including the dealer's right to a benefit or program under any incentive or reimbursement program" as those terms are used in Maryland Dealer Act § 15-207(e)(3)(i).

101.    RPB is a sales performance criteria that is unfair, unreasonable, inequitable, and does not consider all relevant and material local and regional criteria, data, and facts.

102.    RPB objectives are determined using a nebulous, arbitrary method.

103.    RPB sales objectives do not include all relevant and material criteria, data, or facts, and do not fairly compare Plaintiff to dealerships of comparable size in comparable markets.

19

104.    RPB objectives do not accurately reflect the sales opportunities available to Plaintiff; rely on a percentage of growth that is arbitrarily established by Genesis; use averages that by definition impose unequal standards on dealers; fail to consider relevant and material local criteria, data, and facts specific to the market served by Plaintiff; and fail to consider the performance of other motor vehicle dealers of comparable size to Plaintiff in comparable markets.

105.    Establishment, implementation, and enforcement of RPB adversely affects Plaintiff, as it has put Plaintiff at risk of forfeiting significant incentive discounts under RPB.

106.    Inheriting the flaws of RPB, the Leadership Bonus is a "performance standard[s], sales objective[s], or program[s] for measuring dealership performance that may have a material effect on the dealer, including the dealer's right to a benefit or program under any incentive or reimbursement program" as those terms are used in Maryland Dealer Act § 15-207(e)(3)(i).

107.    Because Leadership Bonus incentive discounts are contingent on meeting the RPB objective, the Leadership Bonus is a sales performance criteria that is unfair, unreasonable, inequitable, and one that does not consider all relevant and material local and regional criteria, data, and facts.

108.    The Leadership Bonus objective does not include all relevant and material criteria, data, or facts, and does not fairly compare Plaintiff to dealerships of comparable size in comparable markets.

109.    The Leadership Bonus does not accurately reflect the sales opportunities available to Plaintiff; relies on a percentage of growth that is arbitrarily established by Genesis; uses averages that by definition impose unequal standards on dealers; fails to consider relevant and material local criteria, data, and facts specific to the market served by Plaintiff; and fails to consider the performance of other motor vehicle dealers of comparable size to Plaintiff in comparable markets.

110.    Establishment, implementation, and enforcement of the Leadership Bonus adversely affects Plaintiff, as it has put Plaintiff at risk of forfeiting significant incentive discounts.

111.    Plaintiff is therefore entitled to a determination under Maryland Dealer Act § 15-207(e)(3)(ii) that the RPB and the Leadership Bonus are unlawful under Maryland law.

**FOURTH CLAIM FOR RELIEF**
**(Violation of Md. Transp. Code § 15-212.1(c) against the Hyundai Defendants)**

112.    Plaintiff incorporates paragraphs 1 to 80 by reference as though fully set forth herein.

113.    Maryland Dealer Act § 15-212.1 ("Chargeback Statute") regulates manufacturer audits and chargebacks of incentives.

114.    Section 15-212.1(c)(1) of the Chargeback Statute states that if a dealer's incentive claim is shown by the manufacturer "to be false or unsubstantiated, the manufacturer…may charge back the claim within 6 months from the payment of the incentive or reimbursement."

21

115.    The Hyundai Defendants imposed chargeback penalties on Plaintiff for payments made more than six months before the issuance of the Audit Letters.

116.    The chargebacks exceeded the statutory period, otherwise known as a "lookback period," and violated the Chargeback Statute.

117.    Neither Hyundai nor Genesis has claimed that the incentive payments made to Plaintiff, and, specifically, sales related to independent commercial customer Kingsley & Co., were the result of fraud by Plaintiff.

118.    In any event, the sales to Kingsley & Co. were qualifying Retail Sales under the Sales Rules.

119.    The Hyundai Defendants therefore violated the Chargeback Statute by impermissibly charging back incentives Plaintiff properly claimed on sales to Kingsley & Co.

120.    As a direct and proximate result of the conduct by the Hyundai Defendants, Plaintiff has been damaged in an amount to be determined at trial and exceeding $75,000.

## FIFTH CLAIM FOR RELIEF
### (Violation of Md. Transp. Code § 15-206.1 against the Hyundai Defendants)

121.    Plaintiff incorporates paragraphs 1 to 80 by reference as though fully set forth herein.

122.    Maryland Dealer Act § 15-206.1 imposes a duty of good faith on the Hyundai Defendants "(1) [i]n acting or purporting to act under the terms, provisions, or conditions of any franchise agreement; or (2) [i]n in any transaction or conduct governed by this subtitle."

123.    As described herein, incentive payments and chargebacks are transactions or conduct governed by the Maryland Dealer Act.

124.    The Hyundai Defendants failed to act in good faith under Maryland Dealer Act Section § 15-206.1 by charging back hundreds of thousands of dollars in incentive payments that Plaintiff was rightfully entitled to receive.

125.    Maryland Dealer Act § 15-213 provides that any person who suffers a financial injury for any violation of Subtitle 2 may recover damages and reasonable attorneys' fees.

126.    As a direct and proximate result of the conduct by the Hyundai Defendants, Plaintiff has been damaged in an amount to be determined at trial and exceeding $75,000.

### SIXTH CLAIM FOR RELIEF
### (Fraud as to Defendants Prather and DePaul)

127.    Plaintiff incorporates paragraphs 1 to 80 by reference as though fully set forth herein.

128.    Plaintiff asserts this claim in the alternative, in the event Plaintiff's sales to Kingsley & Co. are not Retail Sales under the Sales Rules.

129.    Prior to the issuance of the Audit Letters, Prather and DePaul, respectively, made false statements to Plaintiff regarding the permissibility or validity of Plaintiff's sales to Kingsley & Co.

130.    Defendants Prather and DePaul knew when they made the statements to Plaintiff about the permissibility or validity of Plaintiff's continued motor vehicle sales to Kingsley & Co. that such statements were either false or were made with reckless indifference as to the truth of the statements.

23

131.   Defendants Prather and DePaul knew when they made the statements to Plaintiff about the permissibility or validity of Plaintiff's continued motor vehicle sales to Kingsley & Co. that such statements were made to induce Plaintiff into believing such sales complied with the Hyundai Defendants' Sales Rules.

132.   As Defendants Prather and DePaul were Regional District Sales Managers for Hyundai and Genesis respectively, Plaintiff rightfully relied on such statements by Prather and DePaul about Plaintiff's compliance with the Hyundai Defendants' Sales Rules.

133.   On information and belief, Defendants Prather and DePaul induced Plaintiff into making sales to Kingsley & Co. so they would receive recognition and additional compensation on account of those reported sales.

134.   On information and belief, Defendants Prather and DePaul did receive additional compensation based on the Plaintiff's reported sales to Kingsley & Co.

135.   As a direct and proximate result of the conduct by Prather and DePaul, Plaintiff suffered damages in an amount to be determined at trial and exceeding $75,000.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court issue an order as follows:

1.   On the First Cause of Action, a determination by this Court that the sales efficiency metric is unlawful under Maryland law;

2.      On the Second Cause of Action, a determination by this Court that DPB 4.0 is unlawful under Maryland law;

3.      On the Third Cause of Action, a determination by this Court that RPB and the Leadership Bonus are unlawful under Maryland law;

4.      On the Fourth Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

5.      On the Fifth Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

6.      On the Sixth Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

7.      Attorney's fees, as authorized under Maryland Dealer Act § 15-213;

8.      Prejudgment interest, costs, and disbursements; and

9.      Such other and further relief as the Court deems just and proper.


DATED:      November 17, 2021                    Respectfully submitted,

                                        By:   /s/ Laurel LaMontagne
                                              Laurel LaMontagne # 1412170133
                                              **ARENT FOX LLP**
                                              1717 K St NW
                                              Washington, DC 20006
                                              T: 202-857-6325
                                              F: 202-857-6395
                                              Russell P. McRory (*pro hac vice forthcoming*)
                                              Charles A. Gallaer (*pro hac vice forthcoming*)
                                              Christopher T. Koenig (*pro hac vice forthcoming*)
                                              David A. Yearwood (*pro hac vice*

*forthcoming*)
**ARENT FOX LLP**
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
Tel: 212-484-3900
Email:
laurel.lamontagne@arentfox.com
russell.mcrory@arentfox.com
charles.gallaer@arentfox.com
christopher.koenig@arentfox.com
david.yearwood@arentfox.com
*Attorneys for Plaintiff*

## Certification Pursuant to Maryland Rule 1-313

I certify that I am licensed to practice law in the state of Maryland.

Date: November 17, 2021                 By:    */s/ Laurel LaMontagne*
                                        Laurel LaMontagne # 1412170133

26